UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
1:20-cr-24-MOC-DCK-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| TERESA HENRY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 30). Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) due to her medical conditions and the risk of contracting COVID-19. The Government has responded in opposition to the motion, and Defendant has filed a Reply.

I.     **BACKGROUND**

Defendant was charged in an indictment, alleging that she knowingly and intentionally possessed with intent to distribute 50 grams or more of "actual" methamphetamine. The offense charged carried a ten-year mandatory minimum sentence by statute. According to the Factual Basis, Defendant was identified through interviews as a Jackson County area methamphetamine ("meth") source of supply. (Doc. No. 16). More specifically, it was reported that Defendant was using Frank Lucas as a source of supply, but then she began dealing directly with Lucas' Georgia based source of supply once Lucas went to federal prison for drug trafficking. Defendant would reportedly make trips to Georgia to pick up her supplies of meth and bring them back to Jackson County for distribution to others.

On August 28, 2019, United States Drug Enforcement Administration ("DEA") Task

-1-

Force Officer ("TFO") David Lovedahl applied for and obtained an order authorizing the installation and use of a tracking device on Defendant's vehicle, a black Kia Sportage. The tracking device was installed on Defendant's vehicle on August 29, 2019. On October 2, 2019, at approximately 1:56 a.m., TFO Lovedahl received an alert from the mobile tracking device on Defendant's vehicle that it passed over the Georgia state line and into Georgia, stayed there for a period of time, and then began traveling back towards North Carolina. TFO Lovedahl contacted the North Carolina State Bureau of Investigation ("SBI") and the Jackson County Sheriff's Office ("JCSO") for assistance.

Once investigators located Defendant's vehicle, Deputy Tomeck of the JCSO turned on her blue lights and initiated a stop of the vehicle. Defendant came to a stop at the intersection of U.S, Highway 441 North and Garland Buchanan Road in Sylva, North Carolina. During the course of the stop, Defendant verbally consented to a search of her vehicle. Deputy Parris found a package of meth wrapped in black electrical tape and concealed in the intake vent at the base of the windshield. A roll of similar black electrical tape had been found in the glovebox of Defendant's vehicle.

TFO Lovedahl interviewed Defendant at the Jackson County Detention Center that same day. Defendant admitted she made a trip to Georgia to pick up the meth she got caught with earlier that day. Defendant also admitted that she intended to give the meth to a local meth trafficker. TFO Lovedahl submitted the drug exhibit to the DEA's Mid-Atlantic Laboratory in Largo, Maryland for analysis. The lab confirmed the presence of meth, found that it was 99% pure, and further found that the drug exhibit contained 110 grams of "actual" meth.

Defendant was sentenced to 57 months' imprisonment as a result of her criminal conduct

-2-

Case 1:20-cr-00024-MOC-WCM    Document 38    Filed 11/29/21    Page 2 of 10

and after the application of the so-called "safety valve" provision, which allowed the Court to sentence Defendant without regard to the statutory mandatory minimum. (Doc. No. 28).

Defendant now moves for compassionate release. In her motion, she alleges numerous medical conditions as the basis for her request. Defendant is serving her sentence at SFF Hazelton.

## II. DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely

-3-

policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section

---

helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because she has failed to show extraordinary and compelling circumstances warranting her early release from prison. Defendant alleges in her motion that she suffers from a host of medical conditions, including Chronic Obstructive Pulmonary Disease ("COPD"), asthma, hypertension (more commonly known as high blood pressure) and chronic viral hepatitis C. In a sealed supplement to her filing,

-5-

Case 1:20-cr-00024-MOC-WCM   Document 38   Filed 11/29/21   Page 5 of 10

Defendant included some of her BOP medical records confirming that Defendant does have COPD, appears to suffer from asthma-like attacks related to her COPD, has hypertension, and has a long-term hepatitis C infection. (Doc. No. 31, p. 7, 33–34). Thus, Defendant does suffer from some conditions that could possibly make her more likely to get severely ill from COVID-19. The records submitted by Defendant and the additional records obtained by the Government also reveal, however, that Defendant has been fully vaccinated against the COVID-19 virus. More specifically, Defendant received her first dose of the Pfizer BioNTech vaccine on April 7, 2021. (Doc. No. 31, p. 40 and Gov. Ex. 1, p. 106). She received her second dose of the Pfizer BioNTech vaccine on April 28, 2021. (Doc. No. 31, p. 40 and Gov. Ex.1, p. 106).

Defendant's motion does not assert any specific concerns about COVID-19 or how any of the cited medical conditions may relate to COVID-19 given that she is fully vaccinated against COVID-19. Defendant focuses on her belief that, despite being vaccinated, she is at high risk for contracting COVID-19; that it is unlikely she would recover from the virus she is now vaccinated against; that her medical conditions are debilitating; and that she is not being adequately cared for by BOP. More specifically, Defendant states in her motion that "they neglect to supply oxygen. . .[she] is unable to properly care for herself. She suffers from shortness of breath within 5-10 minutes of movement. She has been called to medical on several occasions for oxygen due to her inability to breathe. Her condition is worsening and the institution's medical department states that they are working on something, but have not done anything as of today." (Doc. No. 30, p. 3).

The Government has shown, in opposing Defendant's motion, that her medical records belie Defendant's contentions as to the seriousness of her medical conditions, as well as her

-6-

Case 1:20-cr-00024-MOC-WCM Document 38 Filed 11/29/21 Page 6 of 10

contention that the BOP is not adequately caring for her. The Government notes that Defendant submitted 50 pages of records in support of her motion, which presumably support the existence of the various medical conditions cited, their severity, and the fact, as alleged, that she is not being properly cared for by the BOP. However, the records submitted appear to have been those selected by Defendant to the exclusion of numerous other records that actually undercut her assertions. The Government notes, for instance, that it could only find a couple of references to anything having to do with asthma in Defendant's medical records from BOP, and only in reference to a medication ordered for Defendant's COPD. The Government notes, for example, on March 4, 2021, BOP Health Services renewed an order for the defendant's Albuterol inhaler, which is described in the report as being used "as needed to prevent/relieve asthma attack," but ordered for treatment of Defendant's COPD. (Gov. Ex. 1, pp. 34–37). Asthma is not listed as one of Defendant's health problems recorded by BOP Health Services. (Gov. Ex.1, pp. 103–04). There is no reference in the records submitted by Defendant or in any record examined by the Government documenting an actual asthma diagnosis, let alone a diagnosis of the moderate to severe asthma that would make it more likely, in keeping with the CDC guidance, Defendant could get severely ill from COVID-19. As such, the Government asserts that there is no evidence that Defendant's asthma, if she even actually has it, is terminal, debilitating, or limits her ability to provide self-care within the environment of a correctional facility.

As for Defendant's chronic hepatitis C, the Government asserts that the medical records show that Defendant's hepatitis C is under control after proper treatment by BOP. As such, there is no evidence that Defendant's chronic hepatitis C infection is terminal, debilitating, or limits her ability to provide self-care within the environment of a correctional facility. The Government

notes, similarly, that although Defendant has a history of hypertension or high blood pressure, it is being treated and is under control.

The Government notes that the most serious condition cited by Defendant and the one giving rise to her claims that she is not being properly treated by BOP is her COPD. The Government asserts that, although the condition appears to pre-date Defendant's incarceration, it has not always been problematic during her time in BOP. Moreover, the Government explains at length, along with supporting documents, that BOP has been adequately treating Defendant's COPD with various medications and treatments.

The Government describes at length in its opposition its assertion that Defendant has continuously exaggerated and mischaracterized the seriousness of her conditions, including describing her medical conditions as terminal, when they are not. The Court finds that the medical records submitted by the Government support this assertion. In sum, contrary to Defendant's claims, she does not have a terminal condition; she does not have a debilitating condition; her ability to provide self-care within the environment of a correctional facility is not limited; there is no evidence that BOP Health Services cannot treat her properly at SFF Hazelton; and there is no evidence that Defendant needs special treatment not available at SFF Hazelton. Given these facts, and that Defendant is now fully vaccinated, Defendant has not presented extraordinary and compelling reasons for early release.

The Court must also consider the § 3553(a) factors, as "applicable," as part of its analysis. See 18 U.S.C. § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). Defendant argues that she should be immediately released because her release "will not upset the Section 3553(a) factors" and "will not cause a disparity between others similarly

situated with her." (Doc. No. 30, pp. 3-4). Contrary to what Defendant argues, she is a threat to society and the community. Methamphetamine is one of the most dangerous drugs prosecuted in this district. Moreover, using the total amount of methamphetamine she was held responsible for in this case, Defendant on just one occasion possessed with intent to distribute more than 1,700 individual user quantities of methamphetamine.

More significantly, however, Defendant has only served a fraction of her sentence. Having entered BOP on December 4, 2020, Defendant has served less than 35% of her required sentence. The need for the sentence to reflect the true extent and seriousness of Defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from Defendant's further crimes all mitigate against granting Defendant's motion for compassionate release. Moreover, Defendant's early release would create an unprecedented and unwarranted sentencing disparity with other similarly situated defendants in this district. Defendant's 57-month sentence is still a just punishment and hopefully enough to deter her from future criminal conduct.

In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Defendant has simply not presented "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 30), is **DENIED**.

Signed: November 24, 2021

Max O. Cogburn Jr
United States District Judge